United States District Court
Southern District of Texas
**ENTERED**
July 21, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 7:19-CV-270 |
| | § | |
| 30.00 ACRES OF LAND, MORE OR LESS, *et al*, | § § § | |
| | § | |
| Defendants. | § | |

# OPINION AND ORDER

The Court now considers the briefs for just compensation filed by the United States of America[1] (hereafter, "United States") and Aleida Flores (hereafter, "Defendant").[2] The Court also considers the "Opposed Motion for Leave to File a Reply to Defendant's Brief for Just and Adequate Compensation"[3] (hereafter, "motion for leave to reply") filed by the United States and the response in opposition filed by Defendant.[4] After considering the motion, record, and relevant authorities, the Court **DENIES** the motion for leave to reply[5] and holds that $250.00 is just compensation in this case.

## I. BACKGROUND AND PROCEDURAL HISTORY

This is a land condemnation case commenced under the Declaration of Taking Act[6] concerning Tract RGV-MCS-1200 as described in the United States' Schedule C, approximately 30 acres of land in Hidalgo County, Texas (hereafter, "Subject Property").[7]

---

[1] Dkt. No. 26.
[2] Dkt. No. 27.
[3] Dkt. No. 28.
[4] Dkt. No. 29.
[5] Dkt. No. 28.
[6] *See* 40 U.S.C. §§ 3111–18.
[7] Dkt. No. 2-1 at 6.

The United States initiated this case on August 5, 2019, with a complaint in condemnation,[8] declaration of taking,[9] and notice of condemnation.[10] The United States represents that Defendant Aleida Flores is the only person with a "claim or interest" in the Subject Property.[11] The United States seeks a temporary, assignable, twelve-month easement over the property.[12] The United States deposited $100.00 in estimated just compensation for the taking.[13] This Court granted the United States access to the Subject Property, subject to certain conditions, on February 5, 2020.[14] At the parties' February 25, 2020, status conference, the parties agreed that the Court will decide the issue of just compensation in this case on the basis of the briefs and evidence submitted.[15] The Court first turns to the motion for leave to reply.[16]

## II.   MOTION FOR LEAVE TO FILE REPLY

Before the Court can address just compensation, the Court must ascertain which filings are being considered. Although both parties filed their briefs for just compensation on

---

[8] Dkt. No. 1.
[9] Dkt. No. 2.
[10] Dkt. No. 3.
[11] Dkt. No. 2-1 at 15; *see* FED. R. CIV. P. 71.1(c).
[12] Dkt. No. 2-1 at 11 ("The estate taken is temporary, assignable easement beginning on the date possession is granted to the United States and ending 12 months later, consisting of the right of the United States, its agents, contractors, and assigns to enter in, on, over and across the land described in Schedule C to survey, make borings, and conduct other investigatory work for the purposes described in Schedule B and to access adjacent lands; including the right to trim or remove any vegetative or structural obstacles that interfere with said work; reserving to the landowners, their successors and assigns all right, title, and privileges as may be used and enjoyed without interfering with or abridging the rights hereby acquired; subject to minerals and rights appurtenant thereto, and to existing easements for public roads and highways, public utilities, railroads and pipelines.").
[13] Dkt. No. 5.
[14] Dkt. No. 21. The Court granted the United States immediate possession but held that the United States must give Defendant 72-hours' notice of any entry onto the Subject Property.
[15] Minute Entry (Feb. 25, 2020); *see* Dkt. No. 27 at 3, ¶ 8 (Defendant "consented to have the Court determine the amount of just compensation on submissions").
[16] Dkt. No. 28.

the same day,[17] only the United States filed a motion for leave to reply to Defendant's brief on just compensation.[18]

Therein, the United States requests this Court grant it leave to reply to Defendant's just compensation brief in order to allow the United States to "address the legal insufficiencies and lack of appraisal standards and supporting evidence as asserted by Defendant in her Brief."[19] The United States notes that Local Rule 7.4 provides parties an opportunity for reply when conducting motion practice before the Court, but not where, as here, the parties have filed Court ordered briefings on a particular matter.[20] Should the Court grant it leave to file a reply, the United States requests the Court consider its reply "the same as it would for motion practice under L.R. 7.4."[21] In response, Defendant "firmly opposes Plaintiff's unjustified Motion for Leave"[22] and argues that the United States seeks a second bite at the apple to make arguments that could have been made in the United States' original brief.[23]

The Court addressed this issue – and identical arguments – in *United States v. 30.00 Acres of Land, More or Less, Situated in Hidalgo County, State of Texas; and Veronica Mendoza* (hereafter, "*U.S. v. Mendoza*").[24] As the Court noted in *U.S. v. Mendoza*, in this Court's typical motion practice, parties who are opposed to a motion are entitled to file a

---

[17] Dkt. Nos. 26–27.
[18] *See* Dkt. No. 28.
[19] *Id.* at 1, ¶ 2.
[20] *Id.* ¶ 3.
[21] *Id.*
[22] Dkt. No. 29 at 1, ¶ 1.
[23] *Id.* at 2, ¶¶ 5–7.
[24] *See United States v. 30.00 Acres of Land, More or Less, Situated in Hidalgo County, State of Texas; and Veronica Mendoza*, Case No. 7:19-cv-234 (Dkt. No. 30).

response to the movant's motion.[25] The movant is then entitled to file a reply to the nonmovant's response within certain time limits.[26]

Here, neither the parties' status conference nor any of the orders following the conference contemplated response or reply briefs.[27] Although Defendant characterizes the Court's order as calling for "simultaneous briefing [that] had the effect of avoiding precisely the sequential back-and-forth that Plaintiff now attempts to create,"[28] the Court's order merely directed the parties "to file briefings on the issue of just compensation" by a deadline[29] that the Court later extended.[30] The Court's order is simply silent on the issue of follow-up briefing. Although Defendant cites to a Western District of Washington case in which the district court in a land condemnation case "intentionally requested that the parties submit their briefing simultaneously," and therefore held "that the Government is not entitled to additional argument," that case is not entitled to any weight,[31] and arises in a different context, after a jury trial, than is present in this case.[32] Whether to grant the United States' request to file a reply appears to be submitted to the absolute discretion of this Court.

In *U.S. v. Mendoza*, the Court denied the United States' motion for leave to reply as moot on the basis that it agreed with the United States that $100.00 constituted just compensation based on the briefs alone.[33] In contrast, the Court does not agree with the United States in the instant Order that $100.00 constitutes just compensation. However, the

---

[25] *See* L.R. 7.4.
[26] *See id.*
[27] *See* Minute Entry (Feb. 25, 2020); Dkt. Nos. 23, 25.
[28] Dkt. No. 29 at 2, ¶ 6.
[29] Dkt. No. 23.
[30] Dkt. No. 25.
[31] *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (quotation omitted) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").
[32] *Fisher v. United States*, No. C09-5146BHS, 2010 WL 4286224, at *1 (W.D. Wash. Oct. 26, 2010).
[33] *United States v. 30.00 Acres of Land, More or Less, Situated in Hidalgo County, State of Texas; and Veronica Mendoza*, Case No. 7:19-cv-234 (Dkt. No. 30 at 4).

Court is not persuaded by the United States' argument that the Court should allow it to file a reply. The United States files identical briefs in support of just compensation in each land condemnation case pending before this Court and merely changes the name of each contesting landowner. The Court finds no reason to allow the United States a second bite at the apple when their first bite is in no way tailored to the facts of each case. The United States should channel its energy into developing its initial arguments in the first brief, rather than trying to actively litigate this case only after a landowner makes a persuasive argument in support of their own estimate of just compensation.

Moreover, the Court does not wish to establish a responsive motion practice on the issue of just compensation. If, in the future, the United States is of the opinion that exigent circumstances exist warranting responsive briefs, the Court will consider such a motion depending on the facts of the case. However, in this case, it is not necessary to consider the United States' proposed reply brief.[34] The Court hereby **DENIES** the United States' motion for leave to reply.[35] The Court now turns to the issue of just compensation.

### III. JUST COMPENSATION

The United States argues that its estimated just compensation, $100.00, is appropriate nominal compensation for the taking granted in this case.[36] Defendant argues that she is entitled to $3,750.00 in just compensation.[37]

### a. Legal Standard

Under the Fifth Amendment to the United States Constitution, private property shall not be taken "for public use, without just compensation."[38] "Just compensation . . . means in

---

[34] *See* Dkt. No. 28-1.
[35] Dkt. No. 28.
[36] *See* Dkt. No. 26 at 10.
[37] Dkt. No. 27 at 3, ¶ 9.

most cases the fair market value of the property on the date it is appropriated."[39] "[T]he underlying principle is that the dispossessed owner 'is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more.'"[40] "Under this standard [of fair market value], the owner is entitled to receive what a willing buyer would pay in cash to a willing seller at the time of the taking."[41] "[I]n general, comparable sales constitute the best evidence of market value . . . the more comparable a sale is, the more probative it will be of the fair market value of the condemned property."[42] Evidence of fair market value can come from evidence of comparable sales and from expert testimony as to the value of the subject property.[43]

"In determining the market value, this Court must look not only at the present use of the property, but also at the highest and best use for which the property is adaptable and needed."[44] "Ordinarily, the highest and best use for property sought to be condemned is the use to which it is subjected at the time of the taking. This is true because economic demands normally result in an owner's putting his land to the most advantageous use."[45] Where a condemnee[46] attempts to claim that the highest and best use for the property taken is

---

[38] U.S. CONST. amend. V (the Takings Clause).
[39] *Kirby Forest Indus. v. United States*, 467 U.S. 1, 10 (1984).
[40] *United States v. 320.0 Acres of Land, More or Less in Monroe Cty. Fla.*, 605 F.2d 762, 780 (5th Cir. 1979) (quoting *Olson v. United States*, 292 U.S. 246, 255 (1934)).
[41] *Id.* (internal quotation marks and quotation omitted); *accord United States v. 50 Acres of Land*, 469 U.S. 24, 29 (1984) (quotation omitted) ("The Court has repeatedly held that just compensation normally is to be measured by the market value of the property at the time of the taking contemporaneously paid in money."); 5th Cir. Pattern Civ. Jury Instruction 13.3 (2014) (internal quotation marks omitted) ("Fair market value means the amount a willing buyer would have paid a willing seller in an arms-length transaction, when both sides are fully informed about all the advantages and disadvantages of the property, and neither side is acting under any compulsion to buy or sell.").
[42] *320.0 Acres of Land*, 605 F.2d at 798.
[43] *Id.* at 798 & n.64.
[44] *United States v. 8.41 Acres of Land, More or Less, Situated in Orange Cty.*, 680 F.2d 388, 394 (5th Cir. 1982); *see United States v. Causby*, 328 U.S. 256, 261 (1946) ("It is the owner's loss, not the taker's gain, which is the measure of the value of the property taken.").
[45] *United States v. Buhler*, 305 F.2d 319, 328 (5th Cir. 1962).
[46] *See Condemnee*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("One whose property is expropriated for public use or taken by a public-works project.").

something other than what the property is currently used for, the Fifth Circuit has held that the burden is on the condemnee to produce credible evidence that, at the time of taking, the use claimed was "practicable" and that "there was a reasonable likelihood that [the property] would be so used in the reasonably near future."[47] Where the taking is temporary, "the Just Compensation Clause of the Fifth Amendment requires that the government pay the landowner for the value of the use of the land during this period."[48] Market rental value is generally the appropriate measure of compensation for a temporary taking.[49] However, even if a taking is temporary, it may effect a complete deprivation of profitable use of property.[50] Whether the taking is permanent or temporary, "[t]he burden of establishing the value of the land sought to be condemned [rests] with the landowner."[51]

    b. Legal Analysis

        i. Evidence Submitted by Defendant

Defendant points primarily to her declaration to establish just compensation.[52] Therein, Defendant provides that she leased the land for hunting, fishing, and recreational use to individuals on an annual basis for $200.00 to $250.00 per person as recently as 2018.[53] Defendant provides that she leased access to the land to two individuals: Ramon Moreno for $250.00 in 2017 and 2018; and Osvaldo Peña for $200.00 in 2015. Defendant

---

[47] *320.0 Acres of Land*, 605 F.2d at 814; *accord United States v. 62.50 Acres of Land More or Less, Situated in Jefferson Par., La.*, 953 F.2d 886, 890 (5th Cir. 1992) ("Potential uses must overcome a presumption in favor of the existing use. A landowner can overcome this presumption only by showing a reasonable probability that the land is adaptable and needed for the potential use in the near future.").
[48] *First English Evangelical Lutheran Church of Glendale v. Los Angeles Cty.*, 482 U.S. 304, 319 (1987).
[49] *Kimball Laundry Co. v. United States*, 338 U.S. 1, 7 (1949).
[50] *See id.* at 14 (discussing that the condemnee's investment "remained bound up in the reversion of the property" so the United States "could no more completely have appropriated the [condemnee's] opportunity to profit" than by putting the condemnee completely out of business for a period of time).
[51] *62.50 Acres of Land*, 953 F.2d at 890 (5th Cir. 1992) (citing *United States ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 273–76 (1943)).
[52] Dkt. No. 27 at 4–6, ¶¶ 11–16.
[53] *Id.* at 5, ¶ 13.

attaches the declarations of Mr. Moreno and Mr. Peña confirming these leases as evidence of her just compensation estimate.[54]

Defendant argues that the easement the United States seeks across her land is similar to the non-exclusive recreational leases she sold to Mr. Moreno and Mr. Peña, with a few exceptions. Defendant argues that the United States' easement would be more burdensome in the sense that it would allow approximately fifteen to twenty people on the land at any given time, and would allow the United States to "'trim or remove any vegetative or structural obstacles' on the property in support of 'conducting surveys, tests, and other investigatory work needed to plan the proposed construction of roads, fencing, vehicles barriers, security lighting, and related structures.'"[55] In support of her argument that fifteen to twenty people could be on the land at any given time, Defendant points to testimony given by Jason Powell, Director of Planning and Project Execution for the Border Wall Program, at a just compensation hearing in a similar case decided by this Court, *United States v. 30.00 Acres of Land, More or Less, et al* (hereafter, "*U.S. v. Velma Flores*").[56] Defendant attaches the transcript from that hearing, wherein Mr. Powell stated that for the United States' initial assessment of the property, "it would be approximately . . . [fifteen] to [twenty] individuals that would go along the property."[57] Defendant argues that because she "charges $250.00 for individual annual access to [the Subject Property], and the government expects '[fifteen] to [twenty] individuals' to access properties under Rights of Entry" then "the government easement is properly valued at $250.00 multiplied by 15 individuals, or

---

[54] *See* Dkt. Nos. 27-2, 27-3.
[55] Dkt. No. 27 at 6, ¶ 15 (citing Dkt. No. 21 at 5).
[56] *See United States v. 30.00 Acres of Land, More or Less, et al*, 7:19-cv-254 (Dkt. No. 35).
[57] Dkt. No. 27-4 at 5, ll. 7–9.

$3,750.00."[58] Defendant also provides that if she "were to enter into an arm's-length transaction to sell access to [the Subject Property] where 15 individuals could access her property for a year," and conduct investigatory work similar to that of the United States, "she would not agree to sell such access for less than $3,750.00."[59]

### ii. Evidence Submitted by the United States

In support of its just compensation estimate, the United States argues that comparable sales do not exist for temporary rights of entry, which have no measurable market value.[60] The United States also argues that Defendant has failed to proffer evidence of comparable sales or show that the temporary easement at issue impairs the value of the Subject Property.[61] In support of its position that $100.00 constitutes just and adequate compensation, the United States attaches a declaration[62] from Roger Jennings, "a licensed real estate appraiser and the Chief Supervisory Review Appraiser with the United States Army Corps of Engineers."[63]

Mr. Jennings declares that he has significant appraisal experience, including in the Rio Grande Valley where the Subject Property is located.[64] Mr. Jennings provides that in his personal judgment and in the judgment of his associates and as reflected by appraisals completed by Mr. Jennings's associates, temporary rights of entry have no measurable market value especially where the easement "does not change the uses for which the property is legally available, has no impact on any potential physically possible use of the

---

[58] Dkt. No. 17 at 6–7, ¶ 17.
[59] *Id.* at 7, ¶ 18.
[60] *See* Dkt. No. 26 at 4, ¶ 8.
[61] *Id.*
[62] *See* 28 U.S.C. § 1746.
[63] Dkt. No. 26 at 5, ¶ 10.
[64] Dkt. No. 26-2 at 1, ¶ 2.

property, and does not impair the use or sale of the property for any of the available uses."[65] The United States relies on this declaration for its position that nominal compensation of $100.00 is just compensation, and is even more generous than $1.00 that would also be just compensation, for the easement at issue.[66] Finally, the United States also comments that, if Defendant suffers any unanticipated damages, she has multiple avenues to pursue recovery.[67]

### iii. Court's Holding on Just Compensation

In both *U.S. v. Mendoza* and *U.S. v. Velma Flores*, this Court took issue with the fact that the defendant landowners in both cases based their just compensation estimates off of the land's propensity to be leased for hunting, but failed to offer any evidence of a past lease or an actual offer to lease the land.[68] In both cases, the defendants relied on a hunting lease offer they had allegedly received from a local car dealership, but offered no evidence of the offer outside of their own testimony.[69] In *U.S. v. Velma* Flores, the United States also failed to proffer any evidence in support of its $100.00 estimate. In light of the lack of evidence from both parties, the Court chose its own nominal just compensation amount of $500.00 for a twelve-month easement over a thirty-acre tract of land similar to the one at issue in this case.[70]

In contrast, in *U.S. v. Mendoza*, the United States attached the declaration of Mr. Jennings supporting its contention that the nominal $100.00 estimate constituted just

---

[65] *Id.* 1–5, ¶¶ 1–11.
[66] Dkt. No. 26 at 7–8, ¶¶ 15–16.
[67] *See id.* at 9–10, ¶¶ 17–18.
[68] *See United States v. 30.00 Acres of Land, More or Less, Situated in Hidalgo County, State of Texas; and Veronica Mendoza*, Case No. 7:19-cv-234 (Dkt. No. 30); *see also United States v. 30.00 Acres of Land, More or Less, et al*, 7:19-cv-254 (Dkt. No. 35).
[69] *See id.*
[70] *United States v. 30.00 Acres of Land, More or Less, et al*, 7:19-cv-254 (Dkt. No. 35).

compensation.[71] Because the defendant offered nothing other than her own declaration regarding the speculative hunting lease from a local car dealership, the Court held that $100.00 was just compensation based on the declaration of Mr. Jennings.[72] The Court stated that "in the absence of evidence of comparable sales, [d]efendant's expert's testimony of value, or any other evidence of the fair market value of a temporary 12-month easement over the Subject Property," the Court could not find that the defendant met her burden to establish that just and adequate compensation was greater than the United States' $100.00 nominal estimate.[73]

The instant case presents an important distinction – both parties offer evidence in support of their just compensation estimates. The United States once again offers the same declaration of Mr. Jennings in support of $100.00,[74] and Defendant offers the declaration of Mr. Moreno in support of her contention that on multiple occasions, she leased the property for hunting, fishing, and recreational purposes at a highest annual rate of $250.00.[75] The declarations of Defendant and Mr. Moreno establish that Defendant has leased an annual hunting lease over the Subject Property for $250.00, which pushes back against Mr. Jennings' contention that temporary rights of entry have no measurable market value at all.[76]

While there is no evidence that Defendant was leasing the Subject Property for hunting and fishing at the time of the taking, the Court finds based on the declarations of Defendant and Mr. Moreno that hunting and fishing were practicable uses for the Subject Property and that there is a reasonable likelihood that the property will be so used in the

---

[71] *United States v. 30.00 Acres of Land, More or Less, Situated in Hidalgo County, State of Texas; and Veronica Mendoza*, Case No. 7:19-cv-234 (Dkt. No. 26-2)
[72] *Id.* (Dkt. No. 30 at 9).
[73] *Id.* (Dkt. No. 30 at 8).
[74] Dkt. No. 26-2.
[75] Dkt. No. 27-2.
[76] Dkt. No. 26-1 at 3, ¶ 16.

reasonably near future.[77] Accordingly, this is the highest and best use of the Subject Property, which the Court must look to in determining market value.[78]

The Court recognizes that the nature of Mr. Moreno's lease and the United States' easement are not identical. The United States can complete certain work on the land, such as surveying, making borings, or trimming and removing any vegetative or structural obstacles that interfere with said work.[79] In contrast, the United States must provide Defendant with notice of its intent to enter the land within 72 hours, and the United States is not authorized to take fish or game from the land as a hunting or fishing lessee would be. Despite these differences, Mr. Moreno's lease and the United States' easement are sufficiently similar as to make Defendant's lease to Mr. Moreno probative to the market rental value of the United States' easement. Both grant non-exclusive access to the land for twelve months, giving both the hunting and fishing lessee and the United States virtually unfettered access to the property.

Mr. Jennings is of the opinion that temporary rights of entry have no measurable market value,[80] but the declarations of Defendant and Mr. Moreno suggest otherwise. Market rental value is generally the appropriate measure of compensation for a temporary taking,[81] and courts look to what a willing buyer would pay in cash to a willing seller.[82] Defendant has, on multiple occasions, leased Mr. Moreno non-exclusive access to the property for a period of twelve months at a price of $250.00.[83] Thus, the evidence proffered by Defendant is sufficient to establish a market rental value that is appropriate for measuring

---

[77] See *320.0 Acres of Land*, 605 F.2d at 814; accord *62.50 Acres of Land,* 953 F.2d 886 at 890.
[78] See *8.41 Acres of Land,* 680 F.2d at 394; see also *Causby*, 328 U.S. at 261 ("It is the owner's loss, not the taker's gain, which is the measure of the value of the property taken.").
[79] See Dkt. No. 2-1 at 11.
[80] Dkt. No. 26-2 at 1–5, ¶¶ 1–11.
[81] *Kimball Laundry Co.*, 338 U.S. at 7 (1949).
[82] *320.0 Acres of Land*, 605 F.2d at 780 (quoting *Olson*, 292 U.S. at 255).
[83] See Dkt. No. 27-2.

just compensation for this temporary taking.[84] The Court holds that $250.00 is just compensation for the temporary, assignable twelve-month easement at issue in the case.

However, the Court disagrees with Defendant's argument that this number should be multiplied by fifteen in light of Mr. Powell's testimony that the United States may send fifteen to twenty surveyors onto the land during the course of the easement.[85] Defendant cites to nothing in support of this argument, and nonetheless, the Court finds this logic unpersuasive for two main reasons. First, the United States is one entity and party to this action. The Court is unaware of any authority or case law authorizing it to hold that just compensation is based on fair market value multiplied by the number of individuals the United States may physically place on the Subject Property when those individuals are not parties to this action.

Second, while the Court has noted that the hunting lease and the United States' easement share similarities as to make the lease's value probative to the value of the easement, their fundamental differences in nature weigh against multiplying the value by fifteen. The value of a hunting and fishing lease lies in the lessee's right to enter the property and eventually take fish and game from the property. The lessee is paying to take fish and game from the land that would otherwise be the property of the landowner, and the landowner is arguably deprived of that fish and game. Thus, it follows that if the owner issues more leases to more lessees, the owner is deprived of more than she would be if she issued only one lease. Moreover, the value of the land itself, as it pertains to hunting and fishing, diminishes as the number of lessees increases. If the land is over hunted or overfished – a common problem with recreational hunting and fishing leases – it becomes

---

[84] *See Kimball Laundry Co.*, 338 U.S. at 7.
[85] *See* Dkt. No. 27 at 5–7, ¶¶ 15–18.

exponentially less valuable to lessees, if it retains any value to them at all. As the owner issues more leases, she is deprived of more of her property and the land is burdened further. Thus, it would follow that she should charge each lessee individually, to compensate her for the fish and game they take and the impact their presence may have on the land.

In contrast, the United States' easement has the same impact on the landowner and the land itself no matter how many individuals the United States has on the property. The purpose of the United States' presence on the property is to determine whether the land is appropriate for the border wall by completing surveys; topographical, geotechnical, and environmental work; and an appraisal.[86] Mr. Powell testified that during the initial assessment of the property, fifteen to twenty individuals may be on the property for "less than half an hour."[87] From there, the United States and its contractors would, at most, enter and complete work on a particular tract of land for six to seven non-consecutive days during the twelve-month easement.[88]

Whether the United States sends fifteen to twenty people onto the land for six to seven non-consecutive days, or it sends one individual onto the land every single day during the twelve-month easement, the impact on the land and the detriment to the landowner remain the same. If each individual's presence on the land changed the burden on the land or the detriment to the landowner, as a hunter or fisherman's presence might, it would be logical for the Court to order that just compensation is the market rental value multiplied by the number of individuals on the land. However, this is not the case. The same work will be

---

[86] *See United States v. 30.00 Acres of Land, More or Less, et al*, 7:19-cv-254 (Dkt. No. 36 at 35, ll. 19–25; 36, ll. 1–2) ("[The Right of Entry] gives [the United States] an opportunity to go out onto the property in order to determine -- we do an initial assessment of where we would like to lay the wall down based upon operational requirements and engineering metrics. Getting on the property helps [the United States] ground truth those locations, our assumptions that we've done. It also allows us to do geotechnical investigations, topographic investigations, surveys in order to further our design process.").
[87] *Id.* at 36, ll. 3–25.
[88] *See id.* at 41–47.

completed by the United States regardless of the number of individuals the United States sends onto the property. Thus, multiplying the market rental value as Defendant suggests would not amount to just compensation.

## IV. HOLDING

For the foregoing reasons, the Court finds **$250.00** to be just compensation for the easement granted in this case.[89] The Court **ORDERS** the United States to deposit an additional $150.00 into the registry of the court, or alternatively to pay that amount directly to Defendant. If paid directly to Defendant, the $100.00 already in the registry of the Court shall then be paid over to Defendant. If deposited in the registry of the Court, the entire $250.00 shall then be paid over to Defendant. The parties shall file dismissal documentation by **August 28, 2020**. Alternatively, the Court **ORDERS** the parties to appear for a status conference on **Tuesday, September 15, 2020 at 9:00 a.m.** and to file a status report in preparation for the conference by **Friday, September 4, 2020**.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 21st day of July, 2020.

_____
Micaela Alvarez
United States District Judge

---

[89] *See* Dkt. No. 21.